UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOLLIS LOCKETT,<br><br>      Petitioner,<br><br>v.<br><br>DAVID L. WINN, WARDEN,<br>FEDERAL MEDICAL CENTER,<br>DEVENS,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)   C.A. No. 04-40124-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RESPONDENT'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Petitioner Hollis Lockett ("Lockett"), Reg. No. 84182-020, is a federal prisoner currently incarcerated at the Federal Medical Center ("FMC Devens") in Devens, Massachusetts. On August 24, 1993, he was sentenced in the United States District Court for the Middle District of Georgia to a 235 month sentence of imprisonment, followed by 5 years of supervised release, for violations of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Possess and Possession with Intent to Distribute Cocaine). See Petition, ¶ 4. Assuming he receives all Good Conduct Time ("GCT") available to him under 18 U.S.C. § 3624(b), his projected release date is April 14, 2010. Petition, ¶ 6. In the event that all of his remaining GCT is disallowed, his full prison term expiration date is October 4, 2012. Id.

In his Petition, Lockett maintains that the BOP has violated his constitutional rights under the Eighth Amendment (and seemingly the Equal Protection Clause) for its failure to

provide him with adequate medical treatment; namely, a kidney transplant.[1]  As relief, Petitioner now seeks an order directing the BOP to provide a date certain for a renal transplant.  See Petition, p.9.

  II.  STATEMENT OF UNCONTESTED MATERIAL FACTS PURSUANT TO L.R. 56.1

  A.  BUREAU OF PRISONS' PROGRAM STATEMENT

On February 11, 2000, the BOP amended Program Statement 6000.05, Health Services Manual, Chapter VI, § 21, to permit its clinical staff to consider organ transplantation as a treatment option for inmates under certain prescribed circumstances.  See Declaration of Sandra Howard, M.D., Clinical Director, FMC Devens, ¶ 3, attached hereto as Exhibit 1.  Under the Program Statement, when the Clinical Director at a BOP institution determines it is medically necessary to evaluate an inmate's suitability for an organ transplant, he or she will initiate an organ transplant laboratory/specialist consultant work-up at the institution.  Id.  Once a specialist determines that an inmate may be a potential candidate for organ transplantation, and the Clinical Director recommends that further evaluation is medically appropriate, the inmate will be evaluated at an appropriate facility such as a transplant center in the vicinity of the institution or a BOP Medical Referral Center.  Id.  If an organ transplant center considers an inmate suitable for a transplant, the institution's Clinical Director will then refer all pertinent medical, surgical and psychiatric documentation to the Medical Director of the BOP for consideration.  Id.  If the Medical Director determines that organ transplantation is medically indicated, the inmate will be referred to an appropriate transplant center in accordance with Bureau policy, transplant center regulations, and state and federal laws.  Id.  Prior to any transplant center referral, the Medical

---

[1] Petitioner also seeks relief under the BOP's Program Statement 6000.05 of its Health Services Manual dealing with organ transplantations.  Id., ¶ 23, 37, 42.

Director must first obtain the concurrence of the Assistant Director, Correctional Programs Division, to ensure that all security issues or correctional interests regarding referral of the inmate have been satisfied. Id.

### B. INMATE LOCKETT'S MEDICAL CARE AT FMC DEVENS

Pursuant to Program Statement 6000.05, Health Services Manual, as detailed above, on October 15, 2003, the BOP referred Lockett's medical, surgical and psychiatric documentation to the Medical Director of the BOP for elective kidney transplant consideration. Id., ¶ 5. The same packet was also forwarded to the transplant team at the University of Massachusetts ("UMASS") for the same consideration. Id. On December 16, 2003, this documentation was evaluated by the Organ Transplant Committee at the BOP's Central Office. Id. The Organ Transplant Committee Finding and Report was provided to FMC Devens in a memorandum from the BOP Medical Director on or about January 6, 2004. Id.

Inmate Lockett's referral was not approved by the Medical Director, as the Organ Transplant Committee concluded that Lockett had several medical and psycho-behavioral contraindications to renal transplantation which required further evaluation. Id., ¶ 6. In the January 6, 2004 Report, the Medical Director made the following recommendations prior to Lockett being re-considered for a kidney transplant:

    a)     A CT scan of the chest be done to exclude a small aortic aneurism and to re-check the mediastinal density.

    b)     Inmate Lockett's parathyroid hormone ("PTH") was elevated as noted in the nephrologist note dated October 1, 2003. This needed further

                evaluation before proceeding with the transplant center evaluation[2].

    c)      Address Lockett's obesity which carries an increased surgical risk.[3]

    d)      Contact Lockett's family members to identify potential donors and arrange for compatibility testing[4].

    e)      Re-submit the transplant request once the above-issues have been addressed and a living-related donor is identified. Id., ¶ 6.

Also, in addition to Lockett having several medical contraindications, the Medical Director noted in his summary that inmate Lockett's "case management and psychological assessments revealed minor incident reports, refusal to accept responsibility for his crime, refusal to participate in the financial responsibility program, and difficulty complying with dietary recommendations."[5] Id. It was also noted, that the psychology assessment did not identify an Axis I or Axis II diagnosis. Id.

---

[2] PTH controls the level of calcium in the blood in two different ways. It supports the role of vitamin D to allow the stomach and digestive tract to absorb calcium, as well as regulates the amount of calcium being added to and subtracted from the bones. The PTH level is significant in that, in some dialysis patients, the para-thyroid gland does not return to normal after transplantation, which can cause decreased calcium to the bones, leading to an increased risk of fractures. Additionally, an increased PTH level can cause deposits of calcium in arteries, including in the heart. A normal PTH level in a dialysis patient is between 100 - 200. The goal is to suppress the para-thyroid gland to that level regardless of the transplantation potential because any increased PTH level enhances the risks associated with the para-thyroid gland function in post-transplantation. Id., ¶ 6(b).

[3] The weight of the patient is also a factor considered by a transplantation team because obesity increases the risks of wound infection and other complications during and after the operation. Id., ¶ 6(c).

[4] This requirement is important because by BOP Policy, the primary transplantation program is a voluntary, family, living donor program. Id., ¶ 6(d).

[5] The transplant recipient has to demonstrate he/she is compliant with treatment and medications. Id., ¶ 6.

In accordance with the aforementioned recommendations made by the BOP's Medical Director for renal transplant approval, FMC Devens addressed the following:

a) Prior to (and after) the aforementioned recommendation, CT scans have been performed on Lockett. For example, a chest CT scan was done on November 13, 2003, and did not identify any aortic aneurism or mediastinal density. Additionally, a second chest CT scan was done on January 6, 2004, at the request of the pulmonologist, as well as a third on April 8, 2004, and a fourth, on July 12, 2004.

b) On October 1, 2003, the nephrologist indicated an elevated PTH. A repeat PTH level was checked on December 3, 2003, and showed minor improvement at 430, however, another PTH level check was completed on February 6, 2004, and showed further fluctuation at 544. The PTH level is checked regularly as part of a normal monthly blood screening. As of September 1, 2004, his PTH level was at 427, markedly improving consistent with diet and medication compliance.

c) As noted previously, there was concern regarding Lockett's obesity. Since his arrival at FMC Devens, Lockett has maintained an excess weight between 229.9 lbs and 240 lbs, despite recommendations for diet and exercise. He has met with the FMC Devens dietitian on a monthly or bi-monthly basis since March 2000. Lockett's lab work shows that he has a chronically high Calcium level, despite using Renagel's rather than a calcium containing phosphorus binder. He also gains 2-4 kg more of fluid between treatments than is recommended. Lockett has not taken advantage of the exercise options available or the dietary education he has received. He continues to be monitored by and have follow up with the FMC

    Devens dietician.

  d)  Recommended telephone contact with the family members who may be potential kidney donors for compatibility testing has occurred.  Lockett met with the FMC Devens Social Worker on Oct 1, 2003, and Oct 6, 2003, to identify and contact potential family kidney donors.  Six family members were identified as potential donors.  This list was forwarded to the Medical Director of the BOP, as well as the UMASS Transplant Team.

  e)  Upon addressing the above medical issues addressed above, the BOP then followed the Medical Director's recommendation and resubmitted a request for transplantation for Lockett.  Id., ¶ 7.

  In response, a number of recommendations were made about Lockett's current medical condition that needed to be addressed before a transplant could be approved.  Id., ¶ 8.  The BOP completed these recommendations at FMC Devens.  Id.  Once these issues were appropriately reviewed, approval was obtained through the BOP's Central Office for transplant consideration.  Thus, Lockett has been approved by the BOP to be evaluated for a kidney transplant by the UMASS Kidney Transplant Department.  Id.  Based upon his last evaluation with the UMASS Transplant Team in September, 2004 a follow up evaluation will be held within nine months thereafter, as per UMASS' request.  Id.  Also, in furtherance of evaluating Lockett for renal transplantation, on November 10, 2004, Lockett took a pulmonary stress test.  Id., ¶ 36.[6]

---

[6] Additionally, in response to Lockett's complaints and to rule out any active tumor or cancer diagnosis which would prevent pursuit of a transplant (transplants are not available to individuals with active cancer), the BOP pursued multi-disciplinary specialty follow-ups and CT scans as directed by the specialists with regard to Inmate Lockett's chronic cough.  While pursuing this cough issue, a lung nodule was also identified, which required multiple CT scan testing and specialty evaluations.  Id., ¶ 8.

6

In closing, Lockett began receiving dialysis treatments in July 1993.  Id., ¶ 37.  As of this date, he is in stable condition and his hemodialysis site is in good condition.  He receives hemodialysis (a machine with blood exchange through a fistula, through a shunt in the vein) three times a week, and is regularly seen by a contract nephrologist.  Id.  As of August of 2004, he now receives, and will continue to receive, monthly tissue typing, a necessary procedure ordered by the UMASS Transplant Team prior to any transplantation Id.  It is the medical opinion of Dr. Howard , Clinical Director of FMC Devens, that Lockett has been receiving fully appropriate medical care while at FMC Devens.  Id.  While the BOP is making every effort to aid him in obtaining a kidney transplant, it must ensure that all other medical issues are stable and will not interfere or present any complications with the procedure.  Id.  FMC Devens and the BOP have optimized his dialysis regime, and continue to pursue his renal transplant.  Id.  Every consultation or procedure requested by or through UMASS, or FMC Devens' contract consultant specialists, was completed in a timely manner consistent with BOP's on-going effort to achieve a renal transplant for Lockett.  Id.  However, the final decision for organ transplantation rests with the Transplant Team at UMASS Hospital, not the BOP.  Id.

### III. ARGUMENT

> PETITIONER CANNOT ESTABLISH A VIOLATION OF A CONSTITUTIONAL RIGHT WHICH WOULD ENTITLE HIM TO HABEAS CORPUS RELIEF, BECAUSE HE IS RECEIVING APPROPRIATE MEDICAL TREATMENT AT FMC DEVENS

Petitioner contends that the Respondent has violated his Eighth Amendment protections, as well as his due process and equal protections rights, by failing to provide him with proper medical care; that is, Plaintiff alleges the Respondent has failed to provide him with a renal transplant even though BOP authorizes such procedures under its Program Statement 6000.05.

See Petition, ¶¶ 21, 23, 42.

Generally speaking, "Habeas corpus is not a compensatory remedy. The object is not to make whole someone who has suffered a loss; it is to determine whether a person is being confined in violation of basic norms of legality." Allen v. Duckworth, 6 F.3d 458, 460 (7th Cir. 1993). Needless to say, in light of the uncontroverted facts, Petitioner cannot establish a violation of any constitutional right which would entitle him to habeas relief. Simply put, Petitioner is receiving exceptional medical treatment at FMC Devens.

Indeed, "In order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir.1985) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Under Estelle . . . specific acts or omissions relative to a prisoner's medical treatment may manifest 'deliberate indifference' on the part of prison officials to a prisoner's well-being. The plaintiff must demonstrate that these official failures constituted 'an unnecessary and wanton infliction of pain' or were 'repugnant to the conscience of mankind.'" Dias v. Vose, 865 F. Supp. 53, 56 (D. Mass. 1994) (citations omitted). Consequently, "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment. Estelle, 429 U.S. at 105-106; Wilson v. Seiter, 501 U.S. 294, 302 (1991)(in prison conditions cases, that state of mind is one of "deliberate indifference" to inmate health and safety).

The Supreme Court has held that deliberate indifference is established when prison officials fail to take reasonable measures to abate a known substantial risk. In Farmer v. Brennan, 511 U.S. 825, 837, (1994), the Supreme Court explained:

>> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . but an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id.[7]

In light of these well-established legal principles, Petitioner has failed to show any deliberate indifference, intentional neglect or mistreatment on the part of the BOP to treat his renal failure and to assess his eligibility to receive a kidney transplant. Other than Petitioner's bald assertions of inadequate medical care, Petitioner fails to allege any facts demonstrating that the care he has received from the BOP meets the stringent deliberate indifference standard discussed above.

Indeed, as outlined in Dr. Howard's Declaration, Petitioner has received (and continues to receive) extensive and appropriate medical treatment at FMC Devens. For example, Petitioner receives ongoing hemodialysis treatments, is closely monitored and evaluated for his chronic renal failure, and is regularly seen by a nephrologist for his condition. See Howard Declaration, Exhibit 2, ¶ 37. Petitioner has also undergone numerous evaluations and tests since the inception of his incarceration to determine his medical, psychological and social support for eligibility to receive a kidney transplant. Id., ¶¶ 8-9. In fact, Petitioner has received repeated

---

[7] In addition, disagreement between an inmate and his doctor as to appropriate choice of medical treatment, however, does not give rise to a constitutional violation because the right under the Eighth Amendment "to be free from cruel and unusual punishment does not include right to treatment of one's choice." Dias, 865 F.Supp. at 57 (quoting Layne v. Vinzant, 657 F. 2d 468, 473 (1st Cir. 1981)). Moreover, although inmates deserve adequate medical care, they are not entitled to insist that they be provided with the most sophisticated care that money can buy. Id.; see also United States v. DeCologero, 821 F. 2d 39, 42 (1st Cir. 1987).

evaluations from UMASS Medical Center's Kidney Transplant Department concerning his eligibility for kidney transplant. Id., ¶ 7, 8, 15, 19-24, 26, 27, 29-37. Undoubtedly, UMASS Medical Center will perform the transplant procedure and it is up to its medical staff to give the final approval on Lockett's condition for a transplant. Id., ¶ 37.

In short, the record reflects that the BOP has done everything it can for Lockett with regard to his request for a kidney transplant.[8] The final decision rests with the medical professionals at UMASS Medical Center. Id. In this regard, after performing several evaluative tests, UMASS has determined at this time that Lockett should be re-evaluated in the next few months. Id., ¶ 34. In the interim, Lockett is receiving adequate medical care at FMC Devens, which includes hemodialysis three times a week, and evaluations by his nephrologist. Id., ¶ 37. Lockett is in stable condition and his hemodialysis site is in good condition. Id. Based on this evidence, Dr. Howard has properly concluded that Petitioner's medical issues are being appropriately managed at FMC Devens.

Needless to say, in light of the above, it is clear that Petitioner's claim must fail. Aside from Petitioner's own desire for a renal transplant and his unsubstantiated claims of inadequate care at FMC Devens, the record is devoid of any violation of his constitutional or statutory rights.[9] In his Petition, Lockett merely recites that his constitutional rights to equal protection

---

[8] For a comprehensive review of Lockett's treatment at FMC Devens in this regard, Respondent directs this Court's attention to paragraphs 9-37 of Dr. Howard's Declaration, Exhibit 1.

[9] In his Petition, Lockett merely recites that his constitutional rights to equal protection have been violated by Respondent without anything more. See Petition, ¶ 27. However, the Petition lacks any allegation of interference with a fundamental right nor the existence of a disadvantaged suspect class that would implicate the Equal Protection Clause. See Story v. Green, 928 F. 2d 60, 63-64 (2nd Cir 1992)(conduct must infringe on guaranteed fundamental

have been violated by Respondent without anything more. See Petition, ¶ 27. However, the Petition lacks any allegation of interference with a fundamental right nor the existence of a disadvantaged suspect class that would implicate the Equal Protection Clause. See Story v. Green, 928 F. 2d 60, 63-64 (2nd Cir 1992)(conduct must infringe on guaranteed fundamental rights, or uses a classification based on suspect criterion such as race, nationality, alienage, or gender to violate the Equal Protection clause. All testing and review by FMC Devens medical staff for purposes of a kidney transplant has been conducted in full and pursuant to the BOP policy and the law. In the end, however, the final decision for organ transplantation rests with the UMASS Transplantation Team, not the BOP. Id., ¶ 37.

## IV. CONCLUSION

For the foregoing reasons, Respondents requests that this Court enter judgment in his favor dismissing the Petition.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

    /s/ Michael Sady
By:    Michael Sady
    Assistant U.S. Attorney
    John Joseph Moakley U.S. Courthouse
    Suite 9200
    Boston, MA 02210
    (617) 748-3100

Dated: November 23, 2004

---

rights, or uses a classification based on suspect criterion such as race, nationality, alienage, or gender to violate the Equal Protection clause).

**CERTIFICATE OF SERVICE**

    I certify that on November 23, 2004, I caused a copy of the foregoing Motion to be served by first class mail, postage pre-paid to Hollis Lockett, Petitioner Reg. # 84182-020, at FMC Devens, P. O. Box 879, Ayer, MA 01432.

                                   /s/ Michael Sady
                                   Michael Sady
                                   Assistant U.S. Attorney

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1**

    Because Petitioner is a pro se prisoner currently incarcerated in a correctional facility, counsel for the United States respectfully requests leave to file this Motion without a 7.1 conference.

                                   /s/ Michael Sady
                                   Michael Sady
                                   Assistant U.S. Attorney